**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
: 
ROBIN JERSTAD, :
: 
                         Plaintiff, :       18-CV-10470 (JGK) (OTW)
: 
        -against- :       **REPORT & RECOMMENDATION**
: 
NEW YORK VINTNERS LLC, :
: 
                         Defendant. :
: 
-------------------------------------------------------------x

**ONA T. WANG, United States Magistrate Judge:**

**To the Honorable John G. Koeltl, United States District Judge:**

### I. Introduction

Plaintiff Robin Jerstad ("Plaintiff") filed suit on November 11, 2018 against Defendant New York Vintners LLC ("Defendant") for copyright infringement. (ECF 1). After Defendant failed to respond to the complaint, Plaintiff obtained a clerk's certificate of default on February 15, 2019. (ECF 13). Judge Koeltl subsequently found that Plaintiff was entitled to a default judgment and referred the matter to me for an inquest on damages. (ECF 24, 25). I directed Plaintiff to file a supplemental submission by November 13, 2019 supporting the claimed reasonable license fee. (ECF 31, 33). Because Plaintiff's supplemental submission was inadequate, I directed Plaintiff to file another supplemental submission by December 10, 2019 or risk no award for the claimed damages. (ECF 35). Having reviewed Plaintiff's submissions, for the reasons below, I recommend that Plaintiff be awarded a total of $6,000.

II. **Background**

Plaintiff, a professional photographer, registered with the U.S. Copyright Office a photograph depicting wine and fried chicken. Complaint ("Compl.") (ECF 1) ¶¶ 5, 7. As part of his business, Plaintiff licenses his photographs to various online and print media. Compl. ¶ 5. For example, Plaintiff licensed the photograph in question to the online media outlet My San Antonio, which subsequently used the photograph in 2010 in an article on its website. Compl. ¶ 8. Plaintiff alleges that Defendant posted an advertisement online for one of its wine and food classes using the photograph of fried chicken and wine found on My San Antonio's website. Compl. ¶ 11. Before posting the online advertisement, Defendant failed to license the photograph from Plaintiff or obtain Plaintiff's permission to use the photograph. Compl. ¶ 12. Plaintiff registered the photograph with the United States Copyright Office on November 16, 2017.[1] Compl., Ex. C. Plaintiff now brings claims under the Copyright Act and the Digital Millennium Copyright Act ("DMCA"), seeking actual damages, statutory damages, punitive damages, and attorney's fees and costs. Compl. at 5-6.

III. **Discussion**

   a. **Inquest Standard**

Even though a complaint's factual allegations are presumed true in the event of a default, damages allegations are not entitled to the same presumption. *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). Plaintiff must still

---

[1] A plaintiff may bring a suit for copyright infringement for infringement that occurred before the copyright was registered, provided that the suit is instituted after the Copyright Office's decision on the copyright application. *See Fourth Estate Public Benefit Corp. v Wall_Street.com, LLC*, 139 S. Ct. 881, 891-92 (2019). Here, the suit was properly initiated on November 11, 2018, after the certification date of November 16, 2017.

supply an evidentiary basis for the specific damages amount sought. *Santana v. Latino Express Restaurants, Inc.*, 198 F. Supp. 3d 285, 292 (S.D.N.Y. 2016).

An inquest into damages may be conducted without an evidentiary hearing. *See Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 53-54 (2d Cir. 1993); *Maldonado v. La Nueva Rampa, Inc.*, No. 10-CV-8195 (LLS) (JLC), 2012 WL 1669341, at *2 (S.D.N.Y. May 14, 2012) ("[A] hearing is not required where a sufficient basis on which to make a calculation exists."). In this case, no hearing was requested or held, as the damages awarded can be ascertained "with reasonable certainty." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999).

### b. Jurisdiction

Because Plaintiff brings claims under the Copyright Act and the DMCA, the Court has subject matter jurisdiction. *See* 28 U.S.C. § 1331. Plaintiff alleges that Defendant is a New York limited liability company with its principal place of business in New York.[2] Compl. ¶ 6. This is sufficient to satisfy personal jurisdiction over Defendant. *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (noting that a corporation's state of incorporation and principal place of business are its "paradigm all-purpose forums for general jurisdiction"). Venue is also proper as the addresses listed for Defendant, either the one currently listed on the New York Division of Corporations's website or the address where Plaintiff served Defendant with the initial summons and complaint, are both located in Manhattan.

---

[2] The New York Department of Corporations's website also confirms this. *See* Entity Information, N.Y. Dep't of State, Div. of Corps., https://appext20.dos.ny.gov/corp_public/CORPSEARCH.SELECT_ENTITY (last visited October 18, 2019).

c. **Damages**

  i. **Copyright Act Violation**

Plaintiff alleges that Defendant's unauthorized use of his photograph constitutes a willful violation of the Copyright Act. Compl. ¶¶ 14-16. A copyright infringement claim requires a showing that (1) Plaintiff owned a valid copyright and (2) Defendant copied original elements of the copyrighted work. *See Twin Peaks Prod., Inc. v. Publ'n Int'l, Ltd.*, 996 F.2d 1366, 1372 (2d Cir. 1993). These elements are adequately alleged in the complaint, as Plaintiff alleges that he is the sole owner of the copyright interest in the photograph and that Defendant used the entire photograph without obtaining Plaintiff's consent. Compl. ¶¶ 9, 11-12.

Pursuant to 17 U.S.C. §504(a), Plaintiff has elected to recover actual damages instead of statutory damages.[3] Compl. at 5; ECF 27 at 2. Section 504 allows for "actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement." 17 U.S.C. § 504(b). Where, as here, the plaintiff is unable to obtain any discovery from the defendant to identify the defendant's profits, actual damages can be calculated by the loss of a reasonable license fee. *See On Davis v. The Gap, Inc.*, 246 F.3d 152, 164 (2d Cir. 2001). A reasonable license fee must be determined according to the "fair

---

[3] Plaintiff could not claim statutory damages because in his complaint, he expressly limits his claim for relief for copyright infringement to actual damages. *See Silge v. Merz*, 510 F.3d 157, 161 (2d Cir. 2007) (limiting damages in default to damages claimed in complaint due to Rule 54's notice requirement); *see also Homkow v. Musika Records, Inc.*, No. 04-CV-3587 (KMW) (THK), 2008 WL 508597, at *3-4 (S.D.N.Y. Feb. 26, 2008) (precluding actual damages where Plaintiff maintained the election of statutory damages from the complaint through the inquest). The Court surmises that Plaintiff made this election because statutory damages are foreclosed when the infringement occurred before the effective date of copyright registration. *See* 17 U.S.C. § 412. Because Plaintiff elected to only seek actual damages for the copyright infringement claim, I do not need to analyze whether statutory damages are appropriate. *See Super Express USA Publ'g Corp. v. Spring Publ'g Corp.*, No. 13-CV-2814 (DLI) (JO), 2018 WL 1559764, at *4 (E.D.N.Y. Mar. 30, 2018) ("The absence of actual damages does not require an award of statutory damages.").

4

market value" of the copyrighted work and cannot be based on "undue speculation." *See id*. at 166.

Plaintiff proffers a reasonable license fee is $1,500 and provides as support (1) a declaration from Plaintiff stating that $1,500 is "the reasonable licensing fee to which I would have been entitled to" and (2) contract proposals for licensing a purportedly comparable image. (ECF 28 ¶ 6; ECF 36-1 through 36-3). As an initial matter, Plaintiff's declaration on the reasonable license fee merely renders a legal conclusion as opposed to providing any evidence of the photograph's value. *See Jarvis v. K2 Inc.*, 486 F.3d 526, 534 (9th Cir. 2007) (noting that fair market value is "an objective, not a subjective, analysis"); *Terry v. Masterpiece Advert. Design*, No. 17-CV-8240 (NRB), 2018 WL 3104091, at *4 (S.D.N.Y. June 21, 2018) (rejecting plaintiff's estimate and basing damages on Getty Images' pricing list provided by plaintiff).

Because Plaintiff initially submitted only his declaration in support of the actual damages claim, I then gave Plaintiff two opportunities to provide an evidentiary basis for the fair market value of the infringed photograph. After I first alerted Plaintiff that his conclusory declaration was insufficient, Plaintiff submitted a fee proposal for "photo coverage" of a Home Furnishings Association event, which requested $2,900. (ECF 31). By the job description and other language in the proposal, however, it is clear that "photo coverage" encompassed retaining Plaintiff's services in both photographing an event as well as licensing the images. (ECF 34-1). Therefore, this $2,900 fee would be costlier than merely paying to license a photograph that Defendant already possessed.

After I pointed out that Plaintiff's supplementary submission was not analogous to the photograph at issue in the instant suit, ECF 35, Plaintiff then filed a second supplementary

5

submission, attaching two additional invoices/contracts.[4] (ECF 36-2; ECF 36-3). One of the attachments, a contract with UsWeekly magazine, raises similar issues as the Home Furnishings Association proposal. (*See* ECF 36-3). The contract's language shows that the $2,400 fee is for a day-long photo shoot, where Plaintiff's responsibilities include "coordinating the shoot," taking photos, paying the models, and providing 32 photographs for the client. (*Id*.) The usage license is only one part of the contract. (*Id*.) Accordingly, the $2,400 fee is not an appropriate comparison for determining the fair market value of licensing Plaintiff's photograph at dispute in this suit. The second attachment, an invoice to Figure 8 Films for licensing only, is a more appropriate comparison. In that invoice, Plaintiff charges $1,000 per photograph. (ECF 36-2). Although the invoice does not state the size of the photograph or the type of license granted, Plaintiff has finally provided evidence of the value of a license, and I will not require any additional submissions. *See Louis Vuitton S.A. v. Spencer Handbags Corp*., 765 F.2d 966, 972 (2d Cir. 1985) (noting that defendants' failure to produce rebuttal evidence forces them to "bear the burden of uncertainty"). Because Plaintiff has provided no evidence that his photograph in this suit would have a greater market value than the photographs licensed to Figure 8 Films, the record only supports a finding that $1,000 is the fair market value for licensing Plaintiff's photograph.

Instead of seeking the fair market value of licensing his photographs, Plaintiff then proceeds to request a total actual damages award of $3,000 for the copyright claim without

---

[4] Plaintiff had also re-attached the Home Furnishings Association proposal, ECF 36-1, which is still deficient for the reasons outlined earlier.

providing any case law on whether a multiplier is allowed for actual damages[5] or any evidence of why a multiplier would be warranted here. (ECF 27 at 3). Because Plaintiff failed to provide a basis for a multiplier, I recommend that Plaintiff be awarded actual damages of **$1,000**.

### ii. DMCA Violation

A claim under the DMCA arises when a party "without the authority of the copyright owner or the law, intentionally remove[s] or alter[s] any copyright management information." *See* 17 U.S.C. § 1202(b). "Copyright management information" includes identifying information of the work, identifying information of the author, and identifying information of the copyright holder. *See* 17 U.S.C. § 1202(c). Plaintiff sufficiently pleads these elements by alleging that Defendant reproduced a copy of Plaintiff's copyrighted photograph and removed the authorship credit initially listed with that copy. Compl. ¶¶ 19-22.

Unlike the copyright claim, Plaintiff has pleaded and elected to pursue statutory damages for his DMCA claim. (ECF 27 at 4). Under the DMCA, the plaintiff may recover a "sum of not less than $2,500 or more than $25,000." *See* 17 U.S.C. § 1203(c)(3)(B). Plaintiff has not identified in the inquest briefing how many acts of violation occurred. In the complaint, Plaintiff only alleges the removal of the photograph's "gutter credit" as a DMCA violation. Compl. ¶ 19. Accordingly, I find that Plaintiff has provided evidence to sustain finding an award for one DMCA violation.

Rather than assert a damages amount per violation, Plaintiff requests an award of $10,000 in statutory damages. (ECF 27 at 4). Factors to consider when determining statutory

---

[5] Multipliers based on willfulness are only for consideration of statutory damages, not actual damages. *See* 17 U.S.C. § 504(c)(2*); see also Stehrenberger v. R.J. Reynolds Tobacco Holdings, Inc.*, 335 F. Supp. 2d 466, 468 (S.D.N.Y. 2004) (precluding use of a multiplier for actual damages for copyright infringement claim).

damages include "the difficulty of proving actual damages, the circumstances of the violation, whether Defendants violated the DMCA intentionally or innocently, and deterrence." *See Agence France Presse v. Morel*, No. 10-CV-2730 (AJN), 2014 WL 3963124, at *10 (S.D.N.Y. Aug. 13, 2014). Here, it is unclear whether the DMCA violation was willful, as the omitted gutter credit was located below a caption added by My San Antonio and could easily have been ignored. *Cf. Mango v. BuzzFeed, Inc.*, 356 F. Supp. 3d 368, 378 (S.D.N.Y. 2019) (finding willful conduct where the defendant intentionally altered the gutter credit); *Sheldon v. Plot Commerce*, No. 15-CV-5885 (CBA) (CLP), 2016 WL 5107072, at *16-17 (E.D.N.Y. Aug. 26, 2016) (awarding maximum damages where defendants actively removed metadata and added their own watermark), *adopted by* 2016 WL 5107058 (E.D.N.Y. Sept. 19, 2016). Plaintiff has provided no evidence to counter the possibility that Defendant merely copied and pasted the photograph from another website where the gutter credit was not located. Nor has Plaintiff provided any support, case law or otherwise, for the $10,000 figure other than attaching orders where courts adopted the $10,000 in statutory damages listed in the plaintiff's proposed order. (ECF 27-1). Plaintiff has not explained why the orders he attaches are appropriate comparisons. Accordingly, because Plaintiff would have difficulty showing actual damages for removal of the gutter credit and has not made much of an effort to support a damages figure, I recommend that the minimum of **$2,500** be awarded in statutory damages. *See Buzzfeed*, 356 F. Supp. 3d at 378 (awarding $5,000 for intentional alteration of gutter credit); *Romanowicz v. Alister & Paine, Inc.*, No. 17-CV-8937 (PAE) (KHP), 2018 WL 4762980, at *7 (S.D.N.Y. Aug. 3, 2018) (awarding $2,500 in statutory damages where the plaintiff's damages submissions were "bare-boned at best"), *adopted by* 2018 WL 4759768 (S.D.N.Y. Oct. 1, 2018).

d.  **Attorney's Fees and Costs**

Plaintiff seeks $4,070.30 in attorney's fees and $475 in costs. (ECF 27 ¶ 1). Plaintiff only seeks recovery of attorney's fees and costs under the DMCA.[6] *See* 17 U.S.C. § 1203(b)(5) ("may award reasonable attorney's fees to the prevailing party"). In determining whether fees are warranted, the Court looks at factors such as the frivolousness of the non-prevailing party's defenses, motivation, objective reasonableness, and deterrence. *See Bryant v. Media Right Prod., Inc.*, 603 F.3d 135, 144 (2d Cir. 2010). Because Plaintiff is only seeking fees under the DMCA, the pertinent analysis is under Plaintiff's DMCA claim, not his Copyright Act claim.

While Plaintiff had a reasonable non-frivolous claim for copyright infringement, the separate DMCA claim for removal of a gutter credit, while technically valid, is borderline reasonable. Arguably, the DMCA claim was inserted to circumvent the inability to recover attorney's fees under the Copyright Act. Skepticism aside, Plaintiff will recover a not insignificant amount in damages for the DMCA claim and Defendant has not offered any defense for the violation, having defaulted. Therefore, Plaintiff should be entitled to an attorney's fee award, but only in a modest amount.

The Court has "considerable discretion" in determining a reasonable fee. *See Matusick v. Erie County Water Auth.*, 757 F.3d 31, 64 (2d Cir. 2014). "Reasonableness" entails examining both the attorney's hourly rate and the hours expended on the matter. *Millea v. Metro-North R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011). To determine a reasonable hourly rate, the Court can consider the attorney's experience in the field, what similar attorneys in the district charge, and

---

[6] The reason for this might be that under the Copyright Act, attorney's fees are not available where the infringement occurred more than three months before the copyright registration. *See* 17 U.S.C. § 412. Here, Plaintiff did not allege the date of Defendant's infringing conduct.

what other clients pay for similar services. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 191 (2d Cir. 2008). Likewise, reasonable expenditure of hours looks at "whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *See Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992).

Plaintiff's counsel, Richard Liebowitz, states that he has been practicing law since 2015 and charges an hourly rate of $425 an hour.[7] (ECF 27 at 4). Mr. Liebowitz professes an expertise in the field of copyright infringement, having "filed" over 800 cases since January 2016.[8] *Id*. at 4. Although Plaintiff provides a long string cite of cases where law firm partners had approved hourly rates of $500 to $800, it is unclear how those cases are applicable to Mr. Liebowitz, who has been practicing law for approximately four years. *Id*. at 4-5. Other courts have recently awarded Mr. Liebowitz a lower rate. *See, e.g., Whitehead v. Mix Unit, LLC*, No. 17-CV-9476 (VSB) (JLC), 2019 WL 384446, at *5 (S.D.N.Y. Jan. 31, 2019) (awarding requested hourly rate of $350), *adopted by* 2019 WL 1746007 (S.D.N.Y. Apr. 18, 2019); *Myeress v. Elite Travel Group USA*, No. 18-CV-340 (AJN), 2018 WL 5961424, at *5 (S.D.N.Y. Nov. 14, 2018) (same); *Romanowicz*, 2018 WL 4762980, at *7 (same). Accordingly, I will adopt the $350 hourly rate typically awarded and requested by Mr. Liebotwitz.

---

[7] Although parties typically submit attorney declarations supporting an attorney's fee request, in line with the lack of thoroughness in the rest of Plaintiff's submissions, Plaintiff merely includes the relevant information in the memorandum of law without any declaration. (ECF 27 at 4-5). The Court also questions the precision of the submitted billing table, which appears rounded to the nearest half hour. This lack of attention to the filings counsels against granting more than a modest amount of attorney's fees. *Cf. Whitehead v. Mix Unit, LLC*, No. 17-CV-9476 (VSB) (JLC), 2019 WL 384446, at *5 (S.D.N.Y. Jan. 31, 2019) (noting Mr. Liebowitz's memorandum contained no legal analysis), *adopted by* 2019 WL 1746007 (S.D.N.Y. Apr. 18, 2019); *Romanowicz*, 2018 WL 4762980, at *7 (reducing fees because Mr. Liebowitz's filings "make it clear that minimal work and brain power went into" the default judgment motion).

[8] Filing cases does not necessarily indicate an expertise in the field. *See McDermott v. Monday Monday LLC*, No. 17-CV-9230 (DLC), 2018 WL 5312903, at *2 (S.D.N.Y. Oct. 26, 2018) (classifying Mr. Liebowitz as a "copyright troll," a term Mr. Liebowitz contests, for failing to litigate the merits of most of his cases).

Mr. Liebowitz billed 9.5 hours on this matter, primarily on drafting the motion for default judgment and reviewing the case file. (ECF 27 at 5-6). Based on the effort expended by counsel on this case, the billed hours appear high. Mr. Liebowitz spent 30 minutes drafting an entry for default, which is merely completing a one-page template. (*See* ECF 11). Mr. Liebowitz spent another 30 minutes to "process service," which would seem to be the task of a paralegal rather than the managing partner. (ECF 27 at 5). Mr. Liebowitz also billed 4.5 hours on the motion for default judgment, "including attorney declaration [sic]." *Id*. But Plaintiff did not submit an attorney declaration with his motion, and moreover, as noted above, the motion was sorely deficient in providing the necessary information to help the Court determine damages. It is further unclear why Plaintiff's counsel needed 2.5 hours to "conduct due diligence" on Plaintiff's copyright registration and Defendant's infringing webpage. As shown above, Plaintiff's submissions lack much of the relevant factual information, *e.g.*, when Defendant's infringement occurred, how long the webpage was up, and Plaintiff's typical license fees. Accordingly, I find it appropriate that Plaintiff's counsel be awarded six hours to match the level of effort expended on this suit. Combined with the hourly rate of $350, I recommend that Plaintiff be awarded $2,100 in attorney's fees ($350 x 6 hours).

Plaintiff also seeks recovery of $475 for filing and service costs, but provides no documentation in support. (ECF 27 at 6). "Where an attorney fails to provide suitable documentation to substantiate the costs incurred, a court may decline to award costs." *See Zimmerman v. Portfolio Recovery Associates LLC*, No. 09-CV-4602 (PGG), 2013 WL 6508813, at *13 (S.D.N.Y. Dec. 12, 2013). Because Plaintiff declined to provide any evidence of costs, the Court will take judicial notice of the $400 filing fee, as reflected on the docket, but will deny any

additional costs. *See Mango*, 2019 WL 4198866, at *8. As a result, I recommend awarding a total of **$2,500** in attorney's fees and costs ($2,100 + $400).

IV. <u>**Conclusion**</u>

For the foregoing reasons, I recommend that Plaintiff be awarded $3,500 in damages ($1,000 for Copyright Act violation and $2,500 for DMCA violation) and $2,500 in attorney's fees and costs.

V. <u>**Objections**</u>

In accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days (including weekends and holidays) from receipt of this Report to file written objections. *See also* FED. R. CIV. P. 6. A party may respond to any objections within fourteen (14) days after being served. Such objections, and any responses to objections, shall be addressed to the Honorable John G. Koeltl, United States District Judge. Any requests for an extension of time for filing objections must be directed to Judge Koeltl.

**FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.** (*See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir. 1992); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v. Manson*, 714 F.2d 234, 237–38 (2d Cir. 1983)).

Respectfully submitted,

_s/ Ona T. Wang_
**Ona T. Wang**
United States Magistrate Judge

Dated: December 12, 2019
New York, New York